### SOLOMON LATTIMER v. THE MOSAIC GLASS CO., ET AL.

1. VALIDITY OF MORTGAGE EXECUTED BY AN OHIO CORPORATION AFTER REMOVING TO ANOTHER STATE.

    Where a corporation organized and doing business under the laws of this state, abandons its place of business and moves out of the state and its franchise is not taken away on account of such removal, it will, therefore, until that is done, continue to be a corporation and will have power to execute a valid mortgage on its property in this state and such mortgage when properly recorded will operate as a valid lien upon such real estate.

2. FORFEITURE OF FRANCHISE, MANNER OF.

    A corporation created by the laws of Ohio can forfeit its franchise and cease to be a *de jure* corporation only for the causes and in the manner as provided for in sections 6761 to 6793, inclusive.

3. BINDING EFFECT OF OBLIGATIONS INCURRED BY A CORPORATION BEFORE IT HAS BEEN LEGALLY DISSOLVED.

    Until a corporation has been legally dissolved in the manner provided by law, its contracts, obligations and liabilities must be taken and held to be binding upon it, and those who deal with it, to the same extent and upon the same principle that the same official acts of a *de facto* officer are, though he holds no *de jure* right to the office.

APPEAL from the Court of Common Pleas of Hancock county.

FINLEY, J.

This cause comes into this court by way of appeal from the judgment and of the finding of the court of common pleas of Hancock county, at its September term, A. D. 1896.

The contest is between the plaintiff herein and The Findlay Clay Pot Co., a defendant in the action, as to priorities of liens, the plaintiff claiming to hold the prior lien on the property of The Mosaic Glass Co., by virtue of a mortgage executed by the last named party, corporation, on or about the 5th day October, 14.

The defendant, The Findlay Clay Pot Company, claims to hold a lien by virtue of an attachment upon the property of The Mosaic Glass Company, levied about the 14th day of September, 1895, which though younger in point of time than the alleged lien of the plaintiff, i- contended by the defendant, the Clay Pot Company, to be superior to and have precedence over that of the plaintiff, for the reason, as alleged by the Findlay Clay Pot Company in its answer filed herein April 4, 1896, and its supplemental answer, filed December 8, 1896, as follows:

"*First*—That the glass company being an Ohio corporation, with its office and place of business in the city of Fostoria, Ohio, about the 31st of August, 1893, abandoned its plant, office, place of business and residence in said city, ceased all business operations and manufacturing there, and removed its office, place of business and manufacturing plant and machinery to New York, where it has since had and maintained its only place of business, and has ever since operated and transacted its business under its corporate name The Mosaic Glass Company; and that by reason of this abandonment of the plant and place of business, it forfeited its charter and ceased to have corporate existence so as

to have power, as such corporation, to execute a mortgage in the state of New York upon its property in Ohio that, in law, would operate as a lien having priority over the attachment lien of the answering defendant, The Clay Pot Company. And further alleges that the mortgage in question, upon which the plaintiff seeks to hold in this case, was so executed in New York state, under the circumstances here indicated, and having been so executed, is, as against the Clay Pot Company, void, and without authority of law.

· "As a second ground why the attachment lien of the answering defendant, The Findlay Clay Pot Company, should have priority over plaintiff's alleged mortgage, said answering defendant says that it had no notice or knowledge of the existence or execution of said mortgage other than that afforded by an inspection of the record thereof, and that the same is void as against the lien of this answering defendant, The Findlay Clay Pot Company, for the reason as shown in the mortgage itself, that the conditions of it are so vague, uncertain and indeterminate, and do not sufficiently describe the debt therein attempted to be secured, as to put this answering defendant upon the notice of the nature and extent of plaintiff's alleged lien, and, therefore, as to said Findlay Clay Pot Company, it is null and void."

The plaintiff, by reply to the answer and supplemental answer, puts in issue the several contentions of the Findlay Clay Pot Company.

The city of Findlay is also a party defendant, claiming to hold a prior lien upon a portion of said premises to either of the other parties. Its claim was conceded below on the trial of the case, and decree rendered accordingly, and the same is not disputed here.

On the trial of the case in this court, no serious claim was made on the part of The Findlay Clay Pot Company to any portion of its defense set forth in its answer, except as to the two propositions hereinbefore mentioned, and therefore all questions in the case practically drop out of it, except those two.

On the trial of the case, it was agreed, in writing, signed by the parties, that the following facts are true:

*First*—That The Mosaic Glass Company was a corporation incorporated and organized under the laws of Ohio, with its office and place of business in the city of Fostoria, Seneca county, Ohio.

*Second*—That from the time of its incorporation and organization to about the 14th day of March, 1891, until about the 31st day of August, 1893, The Mosaic Glass Company was operated, transacted its corporate business, manufactured and sold glass, and had its plant, office and place of business in the city of Fostoria, Seneca county, Ohio, and a majority of the members of the board of directors, as also its officers, resided there.

*Third*—That on or about the 31st day of August, 1893, The Mosaic Glass Company vacated its plant, office, and place of business in said city and state of Ohio, ceased all further business, manufacturing and operations there, and removed its office, place of business and manufacturing plant and machinery, except its buildings, to and located in the city of Addison, in the state of New York, where it has since had and maintained its office and place of business, established its plant, operated and transacted its business, and manufactured glass under its corporate name of The Mosaic Glass Company, as an Ohio corporation, and under the charter originally issued by the state of Ohio, and a certificate of

authority from the state of New York, to do business in New York, as an Ohio corporation.

*Fourth*—On the first of January, 1896, The Mosaic Glass Company became insolvent, and has not transacted business, or manufactured glass, and has ceased operations.

Do these facts, which constitute the ground of the answering defendant's contention, operate to divest The Mosaic Glass Company, as a corporation, of the power to execute a mortgage in the state of New York, upon its real estate in Ohio, so as to make it a binding and subsisting lien upon said premises as against a subsequent lienholder? This is the question presented for our consideration.

.Counsel for defendant contends that inasmuch as section 3248, Revised Statutes of Ohio, provides that the corporate powers, business and property of corporations, must be exercised, conducted and controlled by a board of directors, and that a majority of the directors must be citizens of the state; that, when the directors cease to be citizens of the state, and attempt to exercise their powers as directors in another state to which the property and business has been removed, the corporation thereby so far forfeits its franchise that it ceases to be a corporation within the meaning of the statutes to the extent that its so-called board of directors may make a valid mortgage upon its property within this state; contends that this condition of affairs differs from and is unlike a corporation which merely ceases to do business, the directors nevertheless remaining in this state; contends that the difference lies in the fact that in the one case, by removal from the state, bag and baggage, the corporation puts itself beyond the visitorial power of the state to take away its charter, while in the other that power remains; and that, as a principle of law, there can be no corporation *de facto* unless there is back, of it a corporation *de jure*, and cites in support of this principle a number of authorities; among others, the 20 O.

None of the cases cited by counsel support the claim made by him in this case, nor are the facts the same in any case cited; nor have we been able to find a case directly in point. The case of *Phillips, Beckel & Co.* v. *The Knox County Mutual Ins. Co.*, 20 O., 174, cited by counsel, simply goes to the proposition that the property of an incorporated company cannot be insured by the stockholders as their individual property in a mutual insurance company, and therefore, except in some loose, disjointed argument, indulged in by the member of the court rendering the opinion in deciding the question, that case cannot be said to touch the questions in controversy here.

It is true, as has been held by numerous courts, including our own, that the creation of a corporation is an .exercise of sovereign legislative power, which cannot be done beyond the territorial limits of the state exercising such power. In other words, the state of Ohio cannot create a corporation in New York. It is also true that the residence of a corporation is within the state creating it, and where its principal office or place of business is, which has been determined over and over again by our supreme court and other courts.

But those questions are not in issue here. Where a corporation abandons its place of business in the state, and moves out of it, it would be undoubted ground for taking away its franchise for that reason. But the question presented here is, whether that is not done, does it, until that is done, continue to be a corporation with power to execute a mortgage on its property in this state, which will be binding as such?

We think it does. We are of the opinion that a corporation created by the laws of Ohio can forfeit its franchise and cease to be a *de jure* corporation only for the causes and in the manner provided by statute, which are to be found in the Revised Statutes, sections 6761 to 6793, and that "once a corporation, always a corporation," until dissolved in the manner provided by law, so far as its right extends to sue and be sued, contract and be contracted with. To hold otherwise, would be to place the very existence of a corporation at all times in jeopardy, and subject to have its acts and contracts declared null and void, and its obligations to parties dealing with it declared of no validity, because of the alleged existence of some one of the many grounds for which our statute declares the franchise of a corporation may be taken from it and the corporation dissolved. Until a corporation has been legally dissolved in the manner provided by law, its contracts, obligations and liabilities must be taken and held to be binding upon it and those who deal with it, to the same extent and upon the same principle that the official acts of a *de facto* officer are, though he holds no *de jure* right to the office. How can it be said that the change of residence of the members of the board of directors from Ohio to New York, operates to take away the life of the corporation itself? It is not the members of the board of directors which give a corporation its validity as such, but it is its character, granted it by the sovereign power of the state, which alone can destroy the life it gave.

Another principle is involved in this question which is destructive of the defendant's claim. The defendant's claim is founded upon dealings with this same corporation, and it is a well-settled principle that he who deals with a corporation is estopped to deny its corporate capacity. Both the plaintiff and defendant dealt with The Mosaic Glass Company, and their contention in this case grows out of their dealings with that corporation, and neither one can be heard in this proceeding to deny the existence of the corporation with which they dealt.

Is the second ground of defense of The Findlay Clay Pot Company well taken ; viz : that the conditions of the mortgage of plaintiffs are so vague and uncertain and indeterminate as to fail to sufficiently describe the debt therein, and put the answering defendant upon notice of the nature and extent of plaintiff's lien, and therefore void? We think not. The bond on which plaintiff's mortgage rests recites that the indebtedness is $3,000, payable within one year from the date of the bond, with interest, and provides that the bond and mortgage accompanying it are given as collateral security to certain notes made by The Mosaic Glass Company, held by Lattimer and Winton, and the renewal of such notes to be made thereafter. The mortgage itself recites that it is given as security for this sum of $3,000, "according to the condition of a bond, this day executed and delivered by said Mosaic Glass Company to the plaintiff. This, we think, is a sufficient description of the debt, both as to the amount and the condition of payment, when duly recorded, to put a subsequent purchaser or lienholder upon full notice of the right of the plaintiff, and the nature and extent of his lien.

This view of the case is fully sustained by the authorities. In Jones on Mortgages, it is said in the text :

"A mortgage conditioned to pay a note in a certain penal sum, when in fact the note is without penalty, is not invalid for want of reasonable certainty. The whole sum of the penalty may be due, and no one should be misled except through his own negligence to make inquiry as to the

7  Dec.  28

amount due." Citing, in support of this proposition, *Frink* v. *Branch*, 16 Conn., 260.

It is further said, in Jones on Mortgages:

In general, it may be said, that a mortgage is not invalid, either between the parties or as of third persons on account of the uncertainty in description of the debt, when, upon the ordinary principle of allowing extrinsic evidence to apply a written contract to its proper subject-matter, the debt intended to be secured can be shown. That the inquiry is, does the debt exist? If it does, it is not essential that there should be any evidence of it beyond what is furnished by the recitals of the deed."

Independent of this authority and the citations therein, we think this question has been determined by our own supreme court in the case of *Gill* v. *Pinney, Adm'r*, 12 O. S., 38, the syllabus of which reads as follows:

"A mortgage is not invalid as to third persons on account of uncertainty in description of the debt intended to be secured, when, upon the ordinary principle, allowing extrinsic evidence to apply a written contract to its proper subject-matter, the debt intended to be secured may be shown as between the parties."

To the same effect is the holding in *Hurd et al.* v. *Robinson, et al.*, 11 O. S., 232.

Holding these views of the case at bar, we find that, as between the plaintiff and the defendant, The Clay Pot Company, the plaintiff has the first lien on said premises, and judgment will be entered accordingly at the costs of the appellant, The Findlay Clay Pot Company.

*L. E. Hurin*, for plaintiff.

*J. A. Bope*, for defendant.

---

## SCHOOLS—INJUNCTION

[Licking Circuit Court, March Term, 1896.]

Pomerene, Adams and Price, JJ.

[Judge Price of the Third circuit taking the place of Judge Kibler.]